## LEE *VS* CAMPBELL et al.

6p 249
113 161,

[The decision of the court in this case was similar to the decision in the case preceding. See the opinion of the court.]

Error to the Circuit court of Montgomery county.

Trespass to try title. At the March term of the Circuit court of Montgomery county, in the year eighteen hundred and thirty-four, David Campbell, Eliza Campbell, Robert Fountain and Emily, his wife, the said David, Eliza and Emily, being children of Archibald Campbell, deceased; also, Archibald Campbell, Maria Campbell, and Mary Campbell, who are likewise children of Archibald Campbell, who had departed this life before the commencement of this suit,—the three last named being minors, and suing by their next friend, David Campbell, declared against Henry P. Lee, of a plea of trespass to try titles, &c. For that, the said plaintiffs, on the twenty-third day of May, in the year eighteen hundred and twenty-seven, in the county aforesaid, were seised in their demesne, as of fee, of certain lots or parcels of land, situate, lying and being in the town of Montgomery, in the county and State aforesaid, known and described in the said town, as lots, numbers eighteen, nineteen and twenty, on the South side of Washington street. And that, afterwards, to wit, on the day and year aforesaid, the said defendant, with force and arms, broke and entered into the said premises, so situate as aforesaid, and did then and there eject and expel the said plaintiffs from the same, and the possession thereof, had detained, from thence to the commencement of the suit—to the great wrong and injury of the plaintiffs, and against the peace, &c.

And also, for that the plaintiffs, on the first day of

6p                    32

January, in the year eighteen hundred and twenty-seven, were seised in their demesne as of fee, of certain lots or parcels of land, situate, lying and being in the county aforesaid, known as lots, numbers eighteen, nineteen and twenty, on the South side of Washington street, of the town of Montgomety, in the county and State aforesaid, together with one Susan Campbell, by virtue of descent, as heirs at law of Archibald Campbell, who died intestate,—and *that* being so seized as aforesaid, afterwards, to wit, on the twenty seventh day of August, eighteen hundred and twenty-seven, the said plaintiffs, and said Susan were ejected, expelled and disseized of the said premises, by one John Harper, with force and arms, to wit, in the county aforesaid, who entered upon the same, and afterwards conveyed the same to one John Falconer, who was seized and possessed thereof; who afterwards, to wit, on the first day of January, eighteen hundred and thirty, conveyed the same to the defendant, who became seized and possessed thereof, and had enjoyed the rents and profits of the said land, and remained in possession thereof from thence hitherto. And the plaintiffs averred, that after the expulsion and disseisin aforesaid, the said Susan Campbell died intestate, leaving three children. Wherefore, by reason whereof, an action had accrued to the said plaintiffs, to have and demand of the said defendant, six-sevenths undivided parts of the said premises, of which he had so detained the possession from the plaintiffs, to their great wrong and injury, and against the peace and dignity, &c.

To this declaration defendant pleaded *non culpabilis*, and *liberum tenementum*,—and upon these pleas issues were joined.

And at March term of the same court, eighteen hundred and thirty-seven, upon the trial of the case, the following proceedings were had.

The plaintiffs introduced a patent from the United

States, which included the lots in controversy, to John
Falconer.    They then introduced a deed from John
Falconer, the patentee, to Archibald Campbell, which
was duly acknowledged and recorded, and to the ad-
mission of which no objection was taken.   They then
read another deed from John Falconer to Archibald
Campbell, duly acknowledged and recorded, and to
which no objection was taken, for part of the lands de-
scribed in the patent.  .  The plaintiffs then read a pa-
per, signed by the counsel, of record, of the defen-
dant, to the effect following :   That it was admitted,
in this case, and was always, hereafter to be admitted,
that the plaintiffs were the heirs of Archibald Camp-
bell, deceased ; that Archibald Campbell died seized
of the premises described in the declaration.   That
at the time David Campbell made application for his
share, he was of age, but that the other heirs were mi-
nors.    That Harper, who conveyed, was the admi-
nistrator of Archibald Campbell, and that the pro-
ceeds of his sale of the lots were duly accounted for
and distributed.    It was also admitted that the defen-
dant was in possession of the premises sued for, be-
fore action brought, and that the premises set forth,
were situated in the town of Montgomery, in the
county stated.   That the estate of Archibald Camp-
bell was solvent.   That, at the time of the sale by
the administrator, John Harper, he was guardian of
all the minor heirs of Archibald Campbell, and that
the lots brought a fair price, at the time they were
sold by him.    These admissions were in writing, and
signed by the counsel of plaintiffs and defendant, re-
spectively.    The plaintiffs here closed their testimo-
ny.
    The defendant then read from the minutes of the
Orphans' court, an order to the following effect :
" That on application of David Campbell, setting
forth that he was one of the heirs and legatees of Ar-
chibald Campbell, deceased, and entitled to a distri-

butive share of said estate, and praying to have his distributive share of said estate allotted to him, and it appearing to the satisfaction of the court, that the said estate was solvent—it was, therefore ordered by the court, that a writ of distribution should issue to William Y. Higgins, Gardner R. Brown, George Whitman, John Goldthwaite and William Sayre, or any three of them, who were required to make distribution of the estate of Archibald Campbell, deceased, among the legatees, or legal representatives of the said Archibald Campbell, deceased. It was further ordered, that the commissioners certify their acts and doings under their hands and seals, and return the same to the court within six months. This order bore date on the eleventh day of April, eighteen hundred and twenty-seven. They further read from the minutes of the proceedings of said court of the twenty-third day of April, eighteen hundred and twenty-seven, an order, to the effect following: "That John Harper, administrator of the estate of Archibald Campbell, deceased, had come and filed a return of the commissioners theretofore appointed to make distribution of the said estate of the said Archibald Campbell, deceased, among the legatees and legal representatives, from which it appeared, that a division could not be effected, without manifest injury to the said legatees;—it was therefore ordered by the said court, that three weeks' publication should be given, in the 'Alabama Journal,' for all persons, interested in said estate, to appear at a regular Orphans' court, to be holden on the third Monday in May then next, and shew cause, if any they could, why the lands belonging to said estate should not be sold. They then read from the minutes of the same court, of the twenty-first day of May, eighteen hundred and twenty-seven, an order to the effect following: That it appeared, to the satisfaction of the court, that three weeks' publication had been given in the 'Alabama Journal,' for

all persons interested in the estate of Archibald Campbell, dec., to appear and shew cause why the lands belonging to said estate should not be sold, and there being no objection to the same,—it was therefore ordered by the said court, that John Harper, administrator of said estate, proceed to sell all the lands or lots, belonging to the estate of the said Archibald Campbell, deceased, on a credit of twelve months, to the highest bidder, after having given notice by setting up advertisements in three public places, in said county, and publishing said advertisement in the Alabama Journal, for three weeks, successively, before such day of sale.

It was further ordered, that the said John Harper, administrator as aforesaid, enter into bond and sufficient security, that he would observe the rules and directions of law for the sale of real estate by administrators, and that he would well and truly account for the proceeds of said sale. It was further ordered, that the said John Harper, administrator, as aforesaid, make a return of the proceeds of said sale, within three months. The defendant then read a return made by John Harper, sworn to before the clerk of the Orphans' court, shewing that lots nineteen and twenty, on the South side of Washington street, of said town of Montgomery—and which were admitted to be two of the lots in question—were sold to Andrew Dexter,—one for twenty-two dollars, and one for sixteen dollars. This return shewed, that the lots were sold on the sixth day of August, eighteen hundred and twenty-seven, on a credit of twelve months.— They read from the minutes of the proceedings of said court of the second Monday in September, eighteen hundred and twenty-seven, an order, that on that day, John Harper, administrator of the estate of Archibald Campbell, deceased, came and returned an account of the sales of the real estate of the said deceased, which was examined, approved, and ordered to be recorded.

The defendant then read a deed from John Harper to Andrew Dexter, a copy of which was attached to the minutes; to the execution of which no objection was made, but the same was read without objection. They then read orders from the minutes of the County court, of the thirtieth day of October, eighteen hundred and twenty-five, shewing the appointment of John Harper, to be guardian of Eliza Campbell, Ann Maria Campbell, Mary Campbell, and Archibald Campbell. The defendant then closed his testimony.

The plaintiffs admitted the truth of the defendant's testimony, and offered to admit upon the record any inferences of fact, which the court might fairly think deducible from it; and the plaintiffs said that the matters aforesaid—to the jurors who had been duly summoned, elected, and sworn to try the issues joined between the parties aforesaid, in manner and form aforesaid, shewn in evidence by the said defendant— were not sufficient, in law, to maintain the issue joined on the part of the said defendant; and that they the said plaintiffs, to the matters aforesaid, in form aforesaid, shewn in evidence, had no necessity, nor were they obliged by the law of the land to answer, and the said plaintiffs prayed judgment, and that the jury aforesaid might be discharged from giving any verdict upon the said issues, and that their damages, by reason of the premises within mentioned, might be adjudged to them.

And the defendant objected to the discharge of the jury, and insisted that, by the law, he was not compelled to join in the plaintiffs' demurrer to the evidence of the defendant; but the court ordered, defendant to join in demurrer or waive his evidence; whereupon he joined in demurrer, by order of the court as aforesaid.

And at a special term of the Circuit court of Montgomery county, held on the twenty-fourth day of No-

vember, eighteen hundred and thirty-four, came a ju-
ry, who being sworn to try the issues joined between
the parties aforesaid, said they found that defendant
had failed to prove to the satisfaction of the jury—

1st. That the administrator had given bond, in com-
pliance with the requisition of the law.

2d. That he had failed to prove the requisite notice
and publication.

3d. That he had failed to prove the requisite cita-
tion to the heirs.

4th. That he had failed to prove the appointment
of guardians to the minors.

5th. That he had failed to prove the appointment of
commissioners.

6th. That he had failed to prove that the commis-
sioners conveyed the title to the property in question;
but on the contrary, that it was conveyed by the ad-
ministrator.

If, in the opinion of the court, such failures totally
invalidated and made void such conveyance, then the
jury found for the plaintiffs, for lots numbers eighteen,
nineteen, and twenty, otherwise, for lot number eigh-
teen only; and assessed damages at one cent.

And thereupon, all the premises being seen and con-
sidered by the court, and mature deliberation being
thereupon had—It was considered by the court, that
the law arising on the facts, found by the jury in the
special verdict, was with the plaintiffs : it was there-
fore further considered, that the plaintiffs recover of
the defendant, the said lots of land, numbers eighteen,
nineteen and twenty, as described in their declara-
tion, on the south side of Washington street, in the
town of Montgomery, and that they should have a
writ to recover possession of the same, together with
the damages by the jury assessed, and the costs of
their suit in that behalf expended.

And on the second day after the discharge of the ju-
ry, and after they had rendered their verdict in the

cause, the plaintiffs moved the court that a minute of the evidence be made, and a transcript of all the evidences of title produced by plaintiffs and defendant, on the trial of the cause taken, and that the said minute of evidence, and the transcript of deeds and other evidences of title, should form part of the record in the case, and taken as a portion of the proceedings, in order that the application of the finding of the jury in the case, and the judgment of the court might appear of record, and be perfectly understood ; which motion was opposed by defendant, who refused to join in making the minute aforesaid ; but the court granted the motion of plaintiffs, and ordered that the minutes of evidence, and the transcript of the deeds, and other evidences of title, should be taken as part of the record and proceedings in the case submitted by the plaintiffs.

And at September term of the same court, eighteen hundred and thirty-six, came a jury, who being elected, &c. on their oaths, said they found for defendant : it was therefore considered by the court, that the defendant go hence without day, and recover of the plaintiffs his costs, &c. And on motion of the plaintiffs, it was ordered, that the verdict given in the case, and the judgment rendered thereon, should be set aside, and a new trial granted.

And at the March term of the same court, eighteen hundred and thirty-seven, came the parties, and a jury, who being elected, &c. well and truly to try the issue joined between the parties—but after the evidence as well for the plaintiffs as for the defendant, was given before the jury, the plaintiffs filed their demurrer to the evidence, and prayed the discharge of the jury ; to which demurrer, the court required the defendant to join ; which being done, the court, upon the motion of plaintiffs, (and stating the same to be taken at their peril—the practice being disapproved by the court,) required the jury, who had been duly

sworn as aforesaid, to enquire of and assess the plain-tiffs' damage, by reason of the trespass in their decla-ration stated, upon the evidence before them, condi-tioned upon the decision of the court's being in favor of the plaintiffs, upon the demurrer to the evidence aforesaid,—whereupon the jury aforesaid, upon their oaths, said they found for the plaintiffs, upon the con-dition that the court decided the demurrer in favor of the plaintiffs. And the court thereupon gave its opinion as follows :

That in this case, it became material to enquire un-der which of the various acts of the legislature, rela-ting to the subject, the proceedings in the Orphans' court were instituted.    By the fourth section of the act of eighteen hundered and three, it was enacted, that when the real estate of an intestate should de-scend to two or more children, one or more of whom being under age, the Orphans'. court, on application, might order and direct a division of such real estate; the metes and bounds of each share, to be ascertained by three or five indifferent freeholders, appointed by the court, and whose report, or that of a majority re-turned under their hands and seals, and approved and recorded by the court, should be conclusive on the par-ties; provided the heirs not applying, or the guardian of those under age, had notice of the time and place of the meeting of the freeholders.    The act of eigh-teen hundred and twenty, which was supplementary to the foregoing law, and to be taken in connection with it, required the Orphans' court, after the estate was represented solvent, to appoint five commission-ers, who, or a majority of whom, on oath, should make distribution of the estate, and return the same in wri-ting, signed by them, and certified by the justice be-fore whom the commissioners were sworn; provided, that when distribution could not be equitably effected, then the estate should be exposed to public sale, as heretofore.

6P                ,        33

The act of eighteen hundred and twenty-two, made it lawful for the administrator to file a petition for the sale of the real estate, either for the purpose of paying debts or distribution. And the act of eighteen hundred and eighteen, provided for the sale of land, in preference to slaves, for the payment of debts, and for no other cause. And the twenty-eighth section of the act of eighteen hundred and three, provided for the sale of land for the payment of debts, when the personal property was insufficient: the court was, therefore, of opinion, that the proceeding in the Orphans' court was instituted under the forty-third section of the act of eighteen hundred and three, taken in connection with the act of eighteen hundred and twenty.—For these were the only acts at that time, in existence, which authorised the heir to petition for a division or sale of the real estate of his ancestor : and they required that five commissioners should be appointed on the application of one or more of the heirs, and that notice should be given to the minor heirs or their guardian, of the time and place of their meeting: that before the application for division, the estate should be represented solvent, and that when the commissioners made their return on oath, and under their hands and seals, that the division could not be effected without manifest injury, then the estate should be exposed to public sale as theretofore. After these requisitions were complied with, and the commissioners had returned that division could not be effected without injury, the next inquiry was, what meaning was to be given to the expression—that then the estate should be exposed to sale as heretofore. As this expression contemplated the sale of both real and personal estate, the word "heretofore," must be applied according to the subject matter in hand. If the estate was personal, then the law in force, relating to the sale of personal property, when ordered by the Orphans' court, ought to govern ; but if real estate,

then the laws relating to the sale of real estate, would be the only guide. At that time, the act of eighteen hundred and eighteen, and the twenty-eighth section of the act of eighteen hundred and three, were the only laws in being, which pointed out the mode and manner of selling the real estate of an intestate.

By the act of eighteen hundred and eighteen, a citation was required to issue to all persons interested, and if not in the county, then notice was to be pub-lished in some paper, for the parties to appear and shew cause why a sale should not be ordered, and such sale should vest in the purchaser the same title that belonged to the intestate: but the twenty-eighth section of the act of eighteen hundred and three, re-quired the citation to issue at least forty days before the appearance day, and to be set up in three public places in the county, for the space of thirty days, and published during the same time, in a newspaper.— And section thirty-first of the same act provided, that the administrator should give at least forty days' no-tice, by advertising in three public places, and by pub-lication in a newspaper for three weeks in succession, before the day of sale. And the administrator was to sell to the highest bidder, make a deed to the purchas-er, and take from him bond with security. And by the thirtieth section, the administrator was re-quired, before obtaining the order of sale, to give bond with security, &c. The court was therefore of opinion, that they were to look to sections twen-ty-eight, thirty and thirty-one, of the act of eighteen hundred and three, to ascertain what were the next requisites, in obtaining the order and selling the land, after the commissioners had returned that the same could not be divided,—for these served to make a more general provision, and were of larger applica-tion, than the act of eighteen hundred and eighteen. The court then inquired, whether there was a mate-rial defect in the proceeding before the commissioners

made their return. It did not appear from the evidence that the minors or their guardians had notice of the time and place of the meeting of the commissioners; the minors consequently were not parties in court, when the return was made, and these were deemed fatal, unless cured by some subsequent part of the proceedings.

The next requisition was, that the citation should be set up at three public places, for the space of thirty days, and published, during the same time, in a newspaper, and issued at least forty days before the time of appearance; and that before the administrator sold, he should give forty days' notice, by advertising in three public places, and by publication in a newspaper, for three weeks, and also give bond, &c. It was clear, that these very material requisitions had been complied with, in the present case. It had been said, that the order of court, for the writ of distribution, the order of sale, and the order confirming the sale, were acts of a court of competent jurisdiction, and could not now be drawn in question collaterally or incidentally, in a suit in this court.

This was readily recognised, as the well settled law, where the subject was within the jurisdiction, and the parties were properly brought into court. In the present case, the court had jurisdiction of the subject, but it did not appear that the parties in interest were regularly before the court. It did not appear that the minors or their guardian, at any stage of the proceedings, previous to the order of sale, had actual notice. And therefore, the court could not look behind the order or decree, for defects to avoid it—yet, if substantial defects were apparent on the face of the proceeding, or manifest error had intervened subsequent to the order or decree, it might be questioned, even in an incidental or collateral proceeding.

The adjudication, in the case of *Wiley vs Lane's adm'r*, was believed to sustain that doctrine. The au-

,thorities were not in conflict with the conclusion the court attained, and by them it was governed, how much soever inclined to give judgment ' for the defendant, who had the justice of the case with him.

It was, therefore, considered by the court, that the plaintiffs have the title to the premises, in their declaration mentioned, and that they have a writ of possession, to recover the same, and their damages assessed in manner and form aforesaid, together with their costs in that behalf expended.

From this judgment there was a writ of error, and the plaintiff in error in this court, assigned for error—

1st. That the court compelled him to join in demurrer to the evidence, as appears in the record.

2d. That the court erred, in giving judgment against him, as to lot number eighteen, in the declaration mentioned, when no evidence was given of title to said lot.

3d. That the court erred, in giving judgment upon the demurrer to evidence, in favor of said David Campbell, and others, for lots, nineteen and twenty.

4th. Judgment ought, upon the demurrer to evidence, to have been given in favor of the defendant, in the court below.

5th. Judgment ought to have been given for lots nineteen and twenty, in favor of defendant below.

*E. S. Dargan*, for plaintiff in error.
*Campbell*, contra.

ORMOND, J.—Every point raised in this case, by the assignment of errors, has been determined in favor of the plaintiff in error, in the case of *Wyman vs The heirs of Campbell*, determined at the present term of this court. The judgment of the court below, must therefore, be reversed. But, as it appears from the record, that the plaintiff in error, (defendant below,) produced no evidence of title to one of the lots

in controversy, viz : lot designated in the declaration, as number eighteen, judgment is rendered in this court, for that lot, in favor of the defendants in error.

GOLDTHWAITE, J., not sitting.